Mark A. Romeo, Bar No. 173007
mromeo@littler.com
LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
Telephone:   949.705.3000
Fax No.:      949.724.1201

Michelle A. Clark, Bar No. 243777
miclark@littler.com
LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704
Telephone:   559.244.7510
Fax No.:      559.244.7525

Attorneys for Plaintiff
AXLEHIRE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXLEHIRE, INC., a Florida corporation<br><br>Plaintiff,<br><br>v.<br><br>GIGSMART, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT THAT THE ARBITRATION AGREEMENT IS UNENFORCEABLE**<br><br>**(2) DECLARATORY JUDGMENT THAT THE DIRECT HIRE CLAUSE IS UNENFORCEABLE**<br><br>**(3) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 16600**<br><br>**(4) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**<br><br>**(5) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4887-7822-4161.9 / 097392-1023

COMPLAINT

1    Plaintiff AxleHire, Inc. ("Plaintiff" and/or "AxleHire") alleges causes of action

2    against Defendant GigSmart, Inc. ("Defendant" and/or "GigSmart"), as follows:

3                                    **INTRODUCTION**

4    1.    Plaintiff AxleHire brings this lawsuit seeking a court declaration it has not

5    breached any contractual obligation that it owes to GigSmart and that GigSmart's Terms

6    of Use and End User License Agreement found on GigSmart's website (the "Terms &

7    Conditions") are unenforceable.  Specifically, AxleHire seeks a declaration that: 1.)

8    Despite the Ohio choice of law provision contained in the Terms & Conditions,

9    California law applies to this dispute between the parties; 2.) there is no enforceable

10   contract between the parties that would justify either compelling arbitration between

11   them or that support any payment of fees to GigSmart; 3.) the arbitration provision in

12   the Terms & Conditions is unenforceable as it is both procedurally and substantively

13   unconscionable; 4.) California law, including, without limitation, the public policy

14   expressed in Cal. Bus. & Prof. Code Section 16600, forecloses enforcement by

15   GigSmart of the restrictive covenant set forth in Section 6 of Terms & Conditions; and

16   5.) the restrictive covenants in Section 6 of the Terms & Conditions are not enforceable

17   as they violate California law including California Business & Profession Code § 17200

18   *et seq.* and the rules and regulations promulgated by the Federal Trade Commission.

19   2.    Separately, AxleHire bring this lawsuit because although GigSmart has

20   demanded that AxleHire pay it $1,902,500 for purportedly violating the "Direct Hire"

21   provision set forth Section 6 of the Terms & Conditions, yet GigSmart has withheld the

22   substantive information it says it has to support its claims for breach of the "Direct Hire"

23   provision, which precludes AxleHire from determining whether it would owe GigSmart

24   any fees for hiring any former worker who AxleHire may have engaged after being

25   connected with that worker on the GigSmart platform.  Likewise, GigSmart has begun

26   to allege, in the alternative, that AxleHire engaged in "datascraping" of its (GigSmart's)

27   website, which has given AxleHire an unfair advantage in terms of the hiring of

28   workers.  Yet, GigSmart has refused to provide the details behind such allegations.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

2

COMPLAINT

1    Thus, GigSmart has violated the implied covenant of good faith & fair dealing contained

2    in the Terms & Conditions.

3                              **JURISDICTION AND VENUE**

4        3.     This Court has jurisdiction pursuant to 28 U.S. Code §1332.  There is full

5    diversity of citizenship as AxleHire is a Florida corporation with its principal place of

6    business in Emeryville, California and GigSmart is a Delaware corporation with its

7    principal place of business in Denver, Colorado.  The amount in controversy exceeds

8    $75,000 insofar as GigSmart has demanded payment in excess of $1.9 million in alleged

9    fees and has, further, demanded that the parties engage in a costly arbitration proceeding

10   and share the costs thereof.

11       4.     The conduct alleged herein, occurred within, or Defendants directed their

12   wrongful conduct towards, the City of Emeryville in the County of Alameda, State of

13   California. Accordingly, jurisdiction and venue are therefore proper within the Northern

14   District of California pursuant to 28 U.S.C. § 1391(b)(2) and (3).  This Court has

15   personal jurisdiction over GigSmart because GigSmart regularly does and solicits

16   substantial business in California, is consistently and substantially present in California,

17   and has established minimum contacts with this jurisdiction.  GigSmart advertises and

18   offers services for locating permanent and temporary workers in California including

19   within this District.  GigSmart has alleged that drivers hired to work in the State of

20   California are subject to the Direct Hire provisions of its Terms & Conditions, thereby

21   substantially impeding their mobility and ability to be hired by other companies, such

22   as AxleHire.  Thus, a substantial part of the events giving rise to Plaintiff's claims

23   occurred in this District, a substantial part of effected interstate trade and commerce

24   affected by the anti-competitive conduct occurred in this District, and Defendant resides

25   in and conducts its business within this District.

26   / / /

27   / / /

28   / / /

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

3

COMPLAINT

**THE PARTIES**

5.     Plaintiff AxleHire is a corporation incorporated under the laws of the State of Florida, with its principal place of business at 2340 Powell St. #330, Emeryville, CA 94608.

6.     Defendant GigSmart is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 999 18th Street, Suite 1750S, Denver, Colorado 80202.

**FACTUAL BACKGROUND**

7.     AxleHire provides e-commerce companies with expedited and efficient last-mile delivery service.  AxleHire combines innovative technology and superior logistics to deliver cost-effective, reliable same and next-day delivery services for industry leaders and small companies alike.  AxleHire leverages its tech-enabled platform to identify and optimize delivery routes from its metropolitan sortation centers and delivery hubs.  By dynamically optimizing delivery routes to create greater delivery density, AxleHire saves time, miles, and fuel – as well as offers a more environmentally-conscious solution for companies that rely on regular deliveries to their customers.  AxleHire also offers leading edge delivery tracking and customer notifications.

8.     GigSmart's website claims that it is a "software development company specializing in providing on-demand staffing solutions for the growing gig economy."[1] It states that it "serves a two-sided marketplace with staffing apps to help both businesses and workers.  GigSmart Get Workers allows companies to find local Workers and hire them on-demand."[2]  To create a GigSmart account, both potential "Workers" and "Requestors" provide their contact information via a click through user interface comprising at least three different web pages.  In small print on the first page, there is a link to the GigSmart Terms & Conditions.  No user interaction with the link or the Terms & Conditions page is required to set up an account or use the platform.

---

[1] https://gigsmart.com/about-us/.
[2] *Id.*

4887-7822-4161.9 / 097392-1023

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

COMPLAINT

9.     GigSmart charges a fee of $1 per hour to workers and 25-35% of total worker compensation employers (called "Requestors") for each Worker that is hired to drive a route for the Requestor.[3]

10.     GigSmart competes in the market for short-haul freight drivers that can be hired through an online platform.  Labor-on-demand applications, like GigSmart's and AxleHire's, allow users to quickly source workers capable of performing immediate or time-sensitive scheduled tasks.  By maintaining a ready database of workers, sending automated offers, and facilitating online communication between workers and Requestors, users can staff gigs and implement staffing strategies unavailable through more traditional forms of recruiting, such as staffing agencies, that require more time and upfront costs.  In effect, GigSmart's platform operates as its own labor marketplace within the general market for gig drivers supplied through on-demand applications.

## A.     **GIGSMART'S RESTRICTIVE, BAD FAITH COURSE OF CONDUCT**

11.     In or about August 20, 2021, AxleHire created a Get Workers account with GigSmart.  For approximately five months, AxleHire periodically used the GigSmart application ("app") to engage drivers to deliver packages.

12.     In or around February of 2022, AxleHire ceased using the GigSmart app to engage drivers.

13.     In correspondence dated February 18, 2022, counsel for GigSmart AxleHire alleged that AxleHire had violated the attached GigSmart Terms & Conditions, which were dated January 6, 2022, and demanded an "accounting of all Direct Hire activities [defined by the Agreement] so that fees under the Agreement [could] be calculated."   GigSmart's correspondence stated that it had "recently suspended and terminated access to the Platform by AxleHire."  A true and correct copy of the February 18, 2022 letter from GigSmart is attached as **Exhibit 1**.

/ / /

/ / /

---

[3] https://help.gigsmart.com/how-much-does-gigsmart-cost-to-use-requesters

4887-7822-4161.9 / 097392-1023

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

14.     No one at AxleHire recalled agreeing to GigSmart's Terms & Conditions. No evidence that AxleHire had agreed to be bound by the Terms & Conditions was proffered by GigSmart.

15.     On February 23, 2022, counsel for AxleHire responded to GigSmart's February 18, 2022 letter.   AxleHire requested further information and evidence regarding the alleged breach of and/or noncompliance with any agreements between AxleHire and GigSmart.   Finally, AxleHire requested that GigSmart cease and desist with its harassment of AxleHire employees that GigSmart appeared to be contacting in an effort to obtain substantiation of its breach allegations after the fact.   A true and correct copy of the February 23, 2022 letter from AxleHire to GigSmart is attached as **Exhibit 2**.

16.     GigSmart did not respond to AxleHire's correspondence, either by email or by phone.   Instead, without further notice, on April 22, 2022, GigSmart filed a demand for arbitration with the American Arbitration Association ("AAA") in Ohio.   In its demand, GigSmart only wrote a single sentence describing the dispute. It stated, "Respondent has breached the Terms of Use and End User License Agreement it entered into with Claimant, specifically the Direct Hire provisions of said Agreement by failing to provide information and failing to pay fees." GigSmart claimed at least $1,902,500 in damages.   It attached its January 6, 2022, Terms & Conditions to its arbitration demand.   A true and correct copy of the April 22, 2022 Arbitration demand is attached as **Exhibit 3**.

17.     On May 4, 2022, GigSmart sent follow-up correspondence to AxleHire attaching a list of 1600+ names and email addresses (though the list included several duplicate entries) that GigSmart contends were contacted by AxleHire through the GigSmart platform at some, unspecified time.   GigSmart did not provide any details regarding the timing of the alleged communications, nor did it provide AxleHire with a copy of the allegedly operative agreement between them. A true and correct copy of GigSmart's May 4, 2022 letter is attached hereto as **Exhibit 4.**

4887-7822-4161.9 / 097392-1023

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

6

COMPLAINT

18.     In response, and in an effort to cooperatively resolve the parties' apparent dispute, AxleHire responded on the same day (May 4, 2022) once again requesting evidence of the parties' allegedly operative agreement and identification of the dates of contact of all individuals identified by GigSmart.  AxleHire reiterated its request on May 17, 2022.  AxleHire explained that, while it does not believe that the restrictive covenant foreclosing hiring of GigSmart users absent payment of exorbitant fees was enforceable, it nonetheless required further information regarding the alleged dates of contact (which GigSmart admitted it has) to determine whether *any* of the potential drivers fell within the scope of the Direct Hire provisions.  True and correct copies of AxleHire's May 4, 2022 and May 17, 2022 correspondence are attached hereto as **Exhibits 5 and 6** respectively.

19.     Rather than provide the requested information, on May 19, 2022, GigSmart filed a Complaint and Motion to Compel Arbitration in Ohio State Court, styled as *GigSmart Inc. v. AxleHire, Inc.*, Court of Common Pleas in Hamilton County, Ohio, Case No. A2201795 ("Ohio Case").  GigSmart attached its January 6, 2022 Terms & Conditions to its Complaint and its Motion to Compel Arbitration.  A true and correct copy of the May 19, 2022 Complaint is attached as **Exhibit 7**.  A true and correct copy of the Motion to Compel Arbitration is attached as **Exhibit 8**.

20.     On May 23, 2022, the AAA administrator held an initial call between the parties to discuss the logistics of the requested arbitration.  AxleHire appeared specially to object to jurisdiction and to the legal cognoscibility of GigSmart's claims (including its demand for arbitration).  On that call, and because the AAA was insistent that the matter that GigSmart had initiated with the AAA proceed over AxleHire's objections, AxleHire again requested evidentiary substantiation of GigSmart's claim that there existed an enforceable agreement between the parties that had been breached by AxleHire as well as an accounting pursuant to the purported Direct Hire Provisions.

21.     On May 24, 2022, GigSmart filed an affidavit in the co-pending Ohio Case attesting that "on or about August 20, 2021 AxleHire consented and agreed to the terms

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

7

COMPLAINT

and provisions of the Agreement prior to utilizing the GigSmart platform" and attached the operative Terms & Conditions as of that date. However, still, no evidence of AxleHire's consent or agreement was provided other than the witness statement. A true and correct copy of the affidavit is attached hereto as **Exhibit 9**.

22. Following GigSmart's initiation of litigation in Ohio, AxleHire continued to implore GigSmart to fulfill its legal and contractual obligations to identify the factual basis for its allegations and to provide AxleHire with sufficient information to allow AxleHire to identify the Direct Hire fees that it may owe, including information only GigSmart had access to (such as information regarding the nature and timing of communications on its platform). For example, on June 3, 2022, AxleHire transmitted further correspondence to GigSmart reiterating the request set forth in its May 4, 5, 6, and 17 letters for information necessary to evaluate the number of drivers that GigSmart believes to fall within the Direct Hire provision. A true and correct copy of AxleHire's June 3, 2022 letter is attached hereto as **Exhibit 10**.

23. In response, GigSmart refused to provide the requested identification information for the drivers and relevant communications. Instead, in communications dated June 4, 2022 and June 6, 2022, GigSmart took the position that if AxleHire provided GigSmart with the universe of employees it could find that may fall within the scope of the Direct Hire provision then, in turn, GigSmart would provide "examples of four" drivers GigSmart alleges triggered Direct Hire fees. Though AxleHire explained on numerous occasions, without access to the communications made through the GigSmart platform, there is no way for AxleHire to determine which, if any, workers it hired directly within three (3) months of communicating with said workers on the GigSmart platform, GigSmart refused to provide any information that would facilitate the requested accounting. A true and correct copy of the email exchange between counsel dated June 4-7, 2022 is attached hereto as **Exhibit 11**.

24. One June 6, 2022, AxleHire sought clarification of GigSmart's position and asked whether GigSmart's evidence is limited to four alleged violations of the

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

8

COMPLAINT

Direct Hire provision or whether it was refusing to provide the universe of information necessary to calculate damages under the provision.  GigSmart responded that it was the latter and that it was only willing to provide four examples despite having suspended AxleHire's access to the sole source of information (the GigSmart platform) it requires to substantiate any further hires that may fall within the scope of the contract.  *Id.*

25.   To date, GigSmart has not responded to AxleHire's requests for supplemental information regarding the alleged dates of contact with GigSmart drivers nor provided any evidence of a material breach of any enforceable contractual obligation, including but not limited to identifying the dates of alleged communication between AxleHire and subscribers to the GigSmart platform, and any evidence of supposed datascraping by AxleHire.

## B.   GIGSMART'S RESTRICTIVE COVENANT

26.   GigSmart's Terms & Conditions is approximately 17 pages long. Ex. 9. A link is provided to users on the same web page where they can make an account with GigSmart, but no user interaction with the Terms & Conditions is required to create an account.  The Terms & Conditions also provide that *GigSmart* "may revise, modify, and/or supplement these Terms of Use (the 'revised Terms of Use') at any time," without advance notice to its users.  *Id.* at § 2.

27.   The Terms & Conditions specify that the GigSmart Platform "merely offers tools, resources and a venue to connect those seeking Services (Requesters) with those seeking to provide services (Workers)." *Id.* at § 3.  It specifies that GigSmart does "not employ, recommend, or endorse any Users," "is not responsible or liable in any manner for the performance or conduct of any Users," "makes no representations or warranties about the quality of Services provided by any User or about your interactions or dealings with other Users, and "does not screen Users or automatically conduct any kind of identity or background checks."  *Id*.  The Terms of Use further specify that GigSmart does not verify any of the content posted to its platform. *Id*. at § 5.

/ / /

4887-7822-4161.9 / 097392-1023

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

9

COMPLAINT

28.    The Terms & Conditions also include a "Direct Hire" provision that imposes a monetary penalty on Requestors that hire any Worker outside of the GigSmart platform.  The Direct Hire provision provides in full:

> In the event Requester or any Requester director, officer, or employee (collectively, "Requester Personnel") desires to Hire or otherwise directly engage a GigSmart worker outside of the GigSmart platform in the three (3) months following Requester's or any Requester Personnel's last contact with GigSmart worker through the GigSmart platform, Requester will notify GigSmart and subsequently, Requester will be billed and Requester agrees to pay a "Hiring Fee" sum of $500.
>
> In the event Requester does not notify GigSmart within fifteen (15) days that it has Hired a GigSmart worker, Requester shall be obligated to immediately pay to GigSmart $2,500 for each such GigSmart worker it has Hired. The amounts described in both instances (i.e., with or without notice from Requester) shall be referred to as the "Direct Hiring Fee".
>
> Such Direct Hire Fee shall be charged regardless of whether: (a) GigSmart worker contacts Requester or applies to Requester independently or otherwise through a public job posting or other job board; (b) different Requester Personnel are involved in the direct Hire of the GigSmart worker and previous engagement of the GigSmart worker through the GigSmart platform; or (c) Requester notifies GigSmart of such direct Hire or engagement of the GigSmart worker.  Any hire or engagement of the GigSmart worker by Requester set forth above shall be defined as a "Hire" and shall trigger the Direct Hire Fee, including a full-time hire, part[time] worker through the GigSmart platform provides any information regarding GigSmart worker to a third party and that third party hires GigSmart worker within the three (3) month period, in any capacity, whether a full-time hire, part-time hire, independent contractor hire, intern hire, or any other such engagement or relationship where GigSmart worker receives any compensation, directly or indirectly, from Requester and/or the third party.

Ex. 9 (Terms & Conditions) § 6.

29.    On its face, the Direct Hire provision purports to impose a substantial penalty fee on Requestors who hire workers with whom they had contact on the GigSmart platform, regardless of whether the workers were solicited or not and

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4887-7822-4161.9 / 097392-1023

10

COMPLAINT

regardless of whether the workers were placed with the Requestor via a third party staffing agency or alternative labor-on-demand platform. The $500-$2500 materially exceeds any rational cost to GigSmart and is also materially higher than the amount AxleHire would usually pay GigSmart for hiring a worker through its application.

30. Moreover, it appears that GigSmart may demand fees for workers hired through competing labor-on-demand applications (and not just those workers that are directly hired by the Requestor), which is particularly problematic because such applications often do not allow Requestors to screen workers before offers are made for gig work. As a result, AxleHire (and any other Requestor) would be effectively foreclosed from using other platforms while also using GigSmart, for fear that using another platform would result in excessive penalty fees from GigSmart.

31. The Terms & Conditions further provide that "GigSmart will store chat messages, calls, or any other content GigSmart deems appropriate for an indefinite period of time" conducted via its platform. *Id*. at § 7. Users shall have access to their messages as long as their accounts are active on the platform. *Id*. However, the Terms & Conditions provide that once a user account is suspended or terminated, no further access to the platform including to prior messages is permitted. *Id*. at § 3.

32. The Terms & Conditions also include a forum selection and choice of law provision that call for all disputes to be resolved in Cincinnati, Ohio, and subject to Ohio law, even though neither of the parties here are located in Ohio and none of the services at issue here were provided in Ohio. Indeed, the only connection between Ohio and the parties here is that counsel for GigSmart is based in Ohio. Otherwise, GigSmart is a Delaware corporation with its principal place of business in Denver, Colorado.

33. The Terms & Conditions also include a one-sided arbitration provision under the headline "General Provisions," that provides that disputes regarding the Terms & Conditions "shall only be resolved by binding arbitration" except to the extent that GigSmart seeks injunctive relief or the dispute relates to intellectual property disputes, which may be raised in state or federal court. Ex. 9 (Terms of Use) § 11.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

Thus, if GigSmart wants to bring a lawsuit for intellectual property disputes, it can do so in court, yet customers, like AxleHire, must arbitrate all claims without exception. Further, nothing in the link to the Terms & Conditions in any way suggest to a worker and/or user of the GigSmart website will be subject to a mandatory arbitration requirement (which is buried within the fine print in the Terms & Conditions.)

## FIRST CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT
## (THERE IS NO ENFORCEABLE AGREEMENT TO ARBITRATE)

(28 U.S.C. § 2201 Against Defendant)

34.     This claim seeks declaratory relief pursuant to 28 U.S.C. § 2201.

35.     AxleHire re-alleges and incorporates by reference all of the preceding allegations in each preceding paragraph as if set forth fully herein.

36.     AxleHire maintains that GigSmart's initiation of arbitration proceedings against it is improper and unconscionable because there is no enforceable agreement between the parties.  The question of whether a contract has been formed by the parties is one for the Court to decide *before* arbitration can be compelled.  GigSmart's demand for arbitration, its refusal to stay the arbitration proceedings, and its refusal to proffer evidence to substantiate its allegation that AxleHire ever consented to arbitration are procedurally and substantively improper and unconscionable.  GigSmart is plainly using the cost of the pending arbitration for the purpose of extorting money from AxleHire that it does not owe.

37.     GigSmart has offered no evidence that AxleHire consented to the Terms & Conditions when it signed up to access the platform in August 2021.  A new user can create an account with GigSmart without ever signing or otherwise affirmatively acceding to the Terms of Use.  Indeed, the Terms & Conditions are set forth in significantly smaller type above the "sign up" options.  *See*:

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4887-7822-4161.9 / 097392-1023

12

COMPLAINT



In the current version of GigSmart website, a user may sign up for the platform by creating an "account" which requires inputting Facebook, Google, or email credentials and a phone number.  Though signing up requires clicking through at least three separate browser pages, the Terms & Conditions are linked to only one; the user is never directed to the Terms & Conditions page, and links are not provided on any of the subsequent pages of forms required to establish an account.

38.    Moreover, even if AxleHire had consented to the Terms & Conditions operative in August 2021, a position for which there is no evidence, the Court should still find that the arbitration clause is unenforceable on the basis that it is procedurally and substantively unconscionable.  Nowhere in the sign-up process is a user required to affirmatively sign or otherwise consent to the arbitration provision, nor do any of the forms that the user is required to fill out provide any indication that the "Terms & Conditions" include an arbitration provision.  The user is never advised of the rights it is giving up by creating an account.  Thus, the arbitration provision contained in the Terms & Conditions are procedurally unconscionable.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

13

COMPLAINT

39.     Both GigSmart's Terms & Conditions and the Arbitration Provision contain one-sided terms.  For example, GigSmart carves out a right to seek injunctive relief for violations of the suspension and termination section through state or district court litigation, but does not allow the same to its users.  Additionally, the Terms & Conditions allow for GigSmart to revise, modify, and/or supplement the Terms of Use at any time, and such modification is **effective immediately**, either after GigSmart sends notice through its internal e-mail system, or "by such other forms of notice as may be determined by GigSmart."  Ex. 9 at § 2.  The Arbitration provision similarly contains a one-sided provision allowing GigSmart to change the terms of the Arbitration provision "by posting on the Platform or sending you an email." *Id.* at §10.  Such one-sided terms are unfair and oppressive, and as such are substantively unconscionable.

40.     An actual, present and justiciable controversy exists between AxleHire and Defendant with respect to the rights and duties of said parties under GigSmart's Terms & Conditions.  AxleHire contends that it is not bound by GigSmart's Terms & Conditions including the arbitration provision.  GigSmart, however, has initiated arbitration proceedings against AxleHire without AxleHire's consent and without jurisdiction to do so.  Likewise, GigSmart filed a lawsuit in Ohio state court seeking to declare its arbitration provision enforceable and filed contemporaneously with that complaint a motion to compel arbitration, which is pending as of the date this complaint is being filed.

41.     No adequate remedy other than that herein prayed for exists by which the rights of the parties hereto may be determined.

42.     A judicial declaration is necessary and appropriate at this time so that AxleHire can continue to engage in business in California without fear of exposure to liability for alleged violations of void and unenforceable provisions of GigSmart's oppressive and unfair Terms & Conditions.

43.     AxleHire desires a declaration of rights as follows:

(a)     That GigSmart's Terms & Conditions are unenforceable against

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

14

COMPLAINT

1   AxleHire.

2       (b)    That the arbitration provision in the Terms & Conditions is

3   unenforceable and/or unconscionable and AxleHire cannot be required to participate in

4   the pending arbitration.

5   **SECOND CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT**

6   **(THE DIRECT HIRE PROGRAM IS UNENFORCABLE)**

7       (28 U.S.C. § 2201 Against Defendant)

8       44.    This claim seeks declaratory relief pursuant to 28 U.S.C. § 2201.

9       45.    AxleHire re-alleges and incorporates by reference all of the preceding

10  allegations in each preceding paragraph as if set forth fully herein.

11      46.    GigSmart's Direct Hire program is unenforceable and/or has not been

12  breached by AxleHire because the program contravenes California law and public

13  policy and, further because AxleHire did not agree to participate in the program.

14      47.    Of the 1600+ drivers that GigSmart identified as having some contact with

15  AxleHire during the term of the alleged license, several hundred are located in

16  California.  Specifically, AxleHire matched the phone number and/or email addresses

17  provided by GigSmart to drivers who drove routes for AxleHire (whether through direct

18  hire, through GigSmart, or through other DSPs).   Most of these drivers drove

19  exclusively through one service (AxleHire, GigSmart, or another platform), and thus do

20  not fall within the scope of the Direct Hire provision, but are nonetheless identified in

21  GigSmart's list.  Ex. 4.  In short, GigSmart is attempting to enforce no-hire provisions

22  that would lock hundreds of California residents into exclusively using the GigSmart

23  platform to secure driving work.

24      48.    An actual, present and justiciable controversy exists between AxleHire and

25  Defendant with respect to the rights and duties of said parties under GigSmart's Terms

26  & Conditions. AxleHire contends that the Direct Hire provisions of GigSmart's Terms

27  & Conditions are unenforceable as a matter of law under California Business and

28  Professions Code § 16600 and the Sherman Act, 15 15 U.S.C. § 1.  Defendant contends

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

15

COMPLAINT

its Terms & Conditions are enforceable against AxleHire. Specifically, GigSmart contends that the Direct Hire provisions are enforceable, that AxleHire is in breach of those provisions, and AxleHire is liable for upwards of two-million dollars in damages.

49. No adequate remedy other than that herein prayed for exists by which the rights of the parties hereto may be determined.

50. A judicial declaration is necessary and appropriate at this time so that AxleHire can continue to engage in business in California without fear of exposure to liability for alleged violations of void and unenforceable provisions of GigSmart's Terms & Conditions.

51. AxleHire desires a declaration of rights as follows:

(a) That GigSmart's Direct Hire provisions as set forth in the Terms & Conditions are unenforceable against AxleHire.

(b) That California law applies to determine the enforceability of GigSmart's Terms & Conditions.

(c) That the Direct Hire provision is void pursuant to California Business and Professions Code section 16600 and the Sherman Act (15 U.S.C. § 1).

(d) That the forum selection clause and choice of law clause are void because there is not a substantial relationship between the parties and Ohio, nor is there a reasonable basis for the Ohio choice of law.

## THIRD CLAIM FOR RELIEF

## FOR VIOLATION OF CAL. BUS. & PROF. CODE § 16600

(Against Defendant)

52. AxleHire re-alleges and incorporates by reference all of the preceding allegations in each preceding paragraph as if set forth fully herein.

53. GigSmart entered into, implemented, and enforced express agreements that are unlawful and void under Section 16600 of the California Business & Professions Code.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

16

COMPLAINT

54.   GigSmart's Direct Hire provision constitutes a concerted effort and undertaking with the purpose and effect of reducing competition for gig drivers, reducing gig driver mobility, and eliminating opportunities for customers to obtain reasonably priced short haul freight delivery services.

55.   GigSmart's Terms & Conditions constitute a contract to restrain trade, which is contrary to California's settled legislative policy in favor of open competition and are therefore void and unlawful as a matter of law.  Commensurately, GigSmart's efforts to enforce its Terms & Conditions, including by extorting substantial and unsubstantiated sums of money from companies signed up to use its platform to hire drivers, serve no procompetitive purpose and do not protect any legitimate business interest of GigSmart.

56.   GigSmart's Direct Hire provision of the Terms of Use does not fall within any statutory exception to Section 16600.

## FOURTH CLAIM FOR RELIEF

## FOR VIOLATION OF CAL. BUS. & PROF. CODE § 17200 et seq.

(Against Defendant)

57.   AxleHire re-alleges and incorporates by reference all of the preceding allegations in each preceding paragraph as if set forth fully herein.

58.   GigSmart's actions to restrain trade as described herein constitute unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code section 17200 et seq.

59.   GigSmart's imposition of the Direct Hire provision on all users and its efforts to rely on that provision to extort exorbitant, unsubstantiated fees has the intent, purpose, and effect, of unreasonably restraining trade and commerce, improperly impeding and eliminating competition, and injecting fraudulent or intentionally deceptive actions into the market.

60.   GigSmart's conduct constitutes an ongoing violation of California Unfair Competition law by violating the Cartwright Act and Section 16600 of the California

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

17

COMPLAINT

Business and Professions Code. Even if such acts are not found to be a violation of California and Federal antitrust law, they are still unfair, unconscionable, unlawful, and/or fraudulent in nature. As a result of GigSmart's conduct, AxleHire has suffered injury in fact, including the loss of money or property, because of GigSmart's demands for payment of unlawful penalty fees, its bad faith enforcement activities, and its restrictions on labor mobility.

61. GigSmart should be permanently enjoined from its continuing violations of Business and Professions Code section 17200 and AxleHire should be entitled to relief in the form of equitable and monetary remedies.

62. AxleHire brings this claim both for itself and in support of the general public interest to redress a substantial injury to the public imposed by GigSmart's conduct including its effort to impose substantial monetary penalties on anyone that hires workers that are subscribed to the GigSmart platform, even though GigSmart itself does not employ the workers, provides them no training, and may not even provide them with any meaningful opportunities for jobs or compensation. As a party seeking to enforce an important public policy to benefit the market and consumers at large, AxleHire should be afforded its reasonable attorneys fees.

## FIFTH CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (California State Law Or Alternatively Ohio State Law If The Choice Of Law Provision Is Held Applicable and Enforceable Against Defendant)

63. AxleHire re-alleges and incorporates by reference all of the preceding allegations in each preceding paragraph as if set forth fully herein.

64. To the extent that the Court determines there is any enforceable agreement between the parties and that AxleHire is subject to GigSmart's Direct Hire program despite never having expressly agreed to participate in it, GigSmart's conduct has rendered AxleHire's performance under the contract impossible. AxleHire has substantially performed all significant and material requirements of the contract, to the

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4887-7822-4161.9 / 097392-1023

18

COMPLAINT

1   extent it was required to do so, and any conditions that have not been performed are
2   directly impeded by GigSmart's conduct.

3       65.    GigSmart has intentionally interfered with AxleHire's ability to provide an
4   accurate accounting as required by the Direct Hire provisions.  On May 4, 2022, *after*
5   GigSmart filed its Demand for Arbitration, GigSmart provided a list of 1666 names that
6   GigSmart alleges are "workers which AxleHire has communicated with through the
7   GigSmart platform." Ex. 4.  Though GigSmart is contractually obligated to maintain
8   such information (and has admitted that it has it), GigSmart refuses to provide the dates
9   during which the GigSmart "workers" were allegedly subscribers to the GigSmart
10  platform and purportedly subject to its Terms of Use, whether any of those subscribers
11  had terminated their agreements with GigSmart or otherwise refused to accede to its
12  terms, the date(s) of purported communications between said workers and AxleHire,
13  and the last alleged relevant communication (upon which GigSmart rests its contention
14  that it is owed a fee).  *Id*. (requiring that AxleHire identify workers that it believes are
15  subject to the Direct Hire provisions and "we can then cross reference that information
16  with our information to verify the amount of fees.").  Further, GigSmart has made
17  claims that AxleHire has engaged in so-called "data scraping", yet it refuses to provide
18  AxleHire with any specific information to justify its claims.  Rather, despite multiple
19  attempts to obtain this information so that AxleHire can better understand whether it
20  has done anything wrong, GigSmart initiated this litigation.  GigSmart's conduct
21  unfairly frustrates AxleHire's ability to obtain any benefit from contracting to use the
22  GigSmart platform because, for example, GigSmart terminated AxleHire's rights to use
23  the platform (including to access information regarding the communications that
24  allegedly triggered the Direct Hire fees) based on enforcement of a facially unlawful
25  contractual restraint on competition.

26      66.    Moreover, though AxleHire has already stated that GigSmart is in sole
27  possession of the data necessary to determine the extent, if any, of AxleHire's Direct
28  Hire fees (if the contract is enforceable).  GigSmart refuses to confirm any accounting

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

19

COMPLAINT

or provide any evidence to identify other alleged hiring activity that it contends is subject to the Direct Hire provisions.  Ex. 11.  Likewise, AxleHire has told GigSmart that it has no evidence of alleged data scraping, yet GigSmart has refused to provide any substantiation to support such claims.

67.    GigSmart's intentional withholding of relevant information that it has available to it and which would provide a means for effectively accounting for activities allegedly subject to the Direct Hire program – in favor of demanding over $1.9 million and imposing on AxleHire the costs of litigation – and its refusal to provide substantiation for its data scraping claims -- constitute a breach of the covenant of good faith and fair dealing and inflicts injury upon AxleHire, the remedy for which should be a finding that performance is impossible, the contract is void, no damages are owed by AxleHire to GigSmart, and appropriate damages in an amount to be determined are owed by GigSmart to AxleHire.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AxleHire prays for judgment against Defendant GigSmart as follows:

1.    For a declaration that the arbitration provision is unenforceable against AxleHire;

2.    For a declaration that GigSmart's Terms & Conditions of Use are unenforceable against AxleHire and/or that AxleHire has not breached any enforceable provision of the Terms of Use;

3.    For a declaration that California law applies to determine the enforceability of GigSmart's Terms of Use;

4.    For a declaration that the Direct Hire provision of GigSmart's  Terms of Use is void pursuant to California Business and Professions Code section;

5.    For a declaration that the forum selection clause and choice of law clause are void because there is not a substantial relationship between the parties and Ohio, nor is there a reasonable basis for the Ohio choice of law;

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4887-7822-4161.9 / 097392-1023

20

COMPLAINT

1    6.    For injunctive relief, damages, and other legal and equitable remedies as

2    are deemed appropriate to address GigSmart's tortious conduct including breach of the

3    covenant of good faith and fair dealing and its unfair business practices;

4    7.    For attorneys' fees and costs of suit incurred herein; and

5    8.    For such other and further relief as the Court deems just and proper.

6

7    Dated:      June 24, 2022

8                                          LITTLER MENDELSON, P.C.

9

10                                         /s/Mark A. Romeo
                                           Mark A. Romeo
11                                         Michelle A. Clark

12                                         Attorneys for Plaintiff
                                           AXLEHIRE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4887-7822-4161.9 / 097392-1023

21

COMPLAINT